MARK CHOATE, 206229
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490
(206) 424-9705
lawyers@choatelawfirm.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYDIN SHEPHERD,<br><br>Plaintiff,<br><br>vs.<br><br>ADVENTIST HEALTH SYSTEM/WEST dba ADVENTIST HEALTH, BRADLEY C. KNOX, M.D. and Does 1-10, Inclusive,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION<br><br>JURY DEMANDED |

**COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION**

## I. INTRODUCTION

1.0 KAYDIN SHEPHERD, brings this complaint for the tragic and preventable death of his father, Michael Shepherd.. Michael Shepherd, a vulnerable individual grappling with severe alcohol withdrawal including active hallucinations

when sent by Moro Bay Police to ADVENTIST SIERRA VISTA fka SIERRA VISTA REGIONAL MEDICAL CENTER for medical care on February 7, 2023.

1.1 Despite having active visual and auditory hallucinations and a lack of capacity to make medical decisions or care for himself, ADVENTIST SIERRA VISTA failed him by discharging him prematurely without the necessary treatment or transferring him to specialized care available for individuals suffering alcohol crises and/or mental health crises. Instead, the hospital allowed him to walk out of its doors, knowing he was hallucinating and knowing it was unsafe for him to leave.

1.2 This reckless disregard for Michael's well-being directly led to his untimely death as he fell into a ravine sometime after leaving the hospital, with his body found partially submerged in a stream more than a week later. The hospital's actions not only violated basic standards of medical care but also demonstrated a profound failure in humanity. This lawsuit seeks to hold ADVENTIST SIERRA VISTA accountable for its actions, which were not only negligent but also a clear violation of the duty of care owed to Michael Shepherd.

## II. JURISDICTION

2.0 SUBJECT MATTER JURISDICTION: This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as the claims presented arise under the Constitution, laws, or treaties of the United States. Additionally, the

jurisdiction is further supported by the specific statutes implicated in the claims detailed within this complaint.

2.1 PERSONAL JURISDICTION: This Court has personal jurisdiction over the parties involved in this matter, as the defendants reside in, conduct business in, or have otherwise established minimum contacts with the Central District of California, thereby availing themselves to the jurisdiction of this Court pursuant to the principles of due process and the California Long Arm Statute, Cal. Code Civ. Proc. § 410.10.

**III. PARTIES**

3.0 KAYDIN SHEPHERD., whose address is 10534 Rhodesia Ave., Sunland, CA, 91040, is the only child of Michael Shepherd and his successor in interest.

3.1 ADVENTIST HEALTH SYSTEM/WEST dba Adventist Health is a California non-profit corporation. It operates Adventist Health Sierra Vista formerly known as Sierra Vista Regional Medical Center (SVRMC) which is the largest hospital in San Luis Obispo County. It is collectively referred to as ADVENTIST in this Complaint.

3.2 BRADLEY C. KNOX, M.D. is an Emergency Room physician associated with the Sierra Vista Regional Medical Center at the time of the subject

incident. Hereinafter he is referred to as KNOX.

3.3 The true names and/or capacities, whether individual, corporate, associate or otherwise of defendants 1 through 10, inclusive, are unknown to plaintiff at this time who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the defendants fictitiously named herein as a Doe is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said defendants were a legal cause of the injury to the plaintiff and the resulting injury and damages to plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and or capacities of such fictitiously named defendants when the same have been ascertained.

3.4 Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, defendants were the agents, servants, employees, successors-in-interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every defendant as aforesaid was acting as a principal and was negligent in the selection and hiring and retention of each and every defendant as an agent, employee, successor-in-interest and/or joint venture.

## IV. GENERAL ALLEGATIONS

4.0 On February 7, 2023, Michael Shepherd "texted to his girlfriend, Claire McNamara at 2:05 a.m., that he was experiencing severe alcohol withdrawal symptoms, including hallucinations and lack of sleep,

4.1 On February 7. 2023, Michael Shepherd called 911 reporting there were 3 people in his home. (He was hallucinating)

4.2 Later that same day, at approximately 1:47 PM, Michael Shepherd spoke to his Claire McNamara on the phone, reporting no sleep for three days and continuing hallucinations. He stated he was fearful of "aliens" in his house.

4.3 At 3:15 PM, Michael Shepherd sent another text message to his McNamara indicating he was still hallucinating and perceived threatening people in his home.

4.4 At 3:43 PM, Michael Shepherd's boss visited his home, and the police were called because Michael Shepherd was having severe health problems including visual and auditory hallucinations.

4.5 An ambulance went to Michael Shepherd's home. He was not there but was found wandering some distance away. The ambulance crew felt unable to control him given his confused and disoriented behaviors and called for police assistance.

4.6 With Moro Bay Police Department assistance, a San Luis Obispo ambulance transported Michael Shepherd to the San Luis Obispo County Jail arriving at approximately 4:50 p.m.

4.7 The Moro Bay Police Department closed their report of interaction with Michael Shepherd at 5:14 p.m.

4.8 San Luis Obispo County Jail personnel immediately recognized that Michael Shepherd’s disorientation and hallucinations required medical evaluation. They requested an ambulance take him to the hospital.

4.9 At 4:50 PM, an ambulance arrived at the jail. Jail personnel then placed Michael Shepherd in the ambulance for transport to the Sierra Vista Regional Medical Center.

4.10 At 5:13 PM the ambulance notified the hospital it was on its way with Michael Shepherd.

4.11 The ambulance transferred Michael Shepherd to the hospital staff at SVRMC at 5:19 PM.

4.12 At 5:45 PM, while at the hospital, Michael Shepherd texted Claire McNamara, stating “I need help at Sierra. They’re going to kill me. I had no crack.”

4.13 On information and belief, various employees of ADVENTIST examined, evaluated and or treated or failed to examine, evaluate or treat Michael

Shepherd including KNOX.

4.14 At 6:32 PM Michael Shepherd was discharged from the hospital despite his disorientation and active auditory and visual hallucinations, observed by everyone who had communicated or observed him that day.

4.15 Despite being brought to the hospital at the request of the police because of their concerns as to his physical and mental status, Michael was not transferred to a facility with specialized care to evaluate either his severe alcohol withdrawal, his auditory and visual hallucinations, or his mental health.

4.16 On information and belief, Michael Shepherd did not have the capacity to make decisions about his health care because of his disorientation and hallucinations.

4.17 Nothing was done to transfer Michael Shepherd to anyone else's care or any other action taken to make sure he was safe.

4.18 Michael Shepherd, disoriented and hallucinating, walked out of the hospital.

4.19 Michael Shepherd was reported missing by his girlfriend, Claire McNamara on February 13, 2023.

4.20 Michael Shepherd's body was found deceased on February 15, 2023, by a security officer near the premises of SVRMC. The location of his body was

approximately 450 feet from the emergency room door of the hospital.

4.21 An autopsy conducted on February 22, 2023, by Dr. Sam Andrews, confirmed that the cause of death was Alcohol Withdrawal due to Alcoholism with Atherosclerotic Cardiovascular Disease as a contributing factor.

4.22 The autopsy report also noted contusions on Michael Shepherd's legs, which, along with other findings, suggested that he had experienced a fall, likely due to his disoriented state post-discharge.

4.23 The discharge of Michael Shepherd in a known vulnerable and disoriented state directly correlates with the failure of Sierra Vista to provide necessary medical care and ensure the safety of a patient under severe medical distress. This action breached the standard of care required under Federal and California law and directly contributed to the circumstances leading to Michael Shepherd's death.

## V. CAUSES OF ACTION

### COUNT ONE: BREACH OF EMTALA

5.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

5.1 The Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, imposes specific legal duties on hospitals that operate

emergency departments and participate in the Medicare program.

5.2 Under EMTALA, a hospital is mandated to provide an appropriate medical screening examination to any individual who comes to the emergency department and requests examination or treatment for a medical condition, to determine whether an emergency medical condition exists.

5.3 An "emergency medical condition" under EMTALA is defined as a condition manifesting itself by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably be expected to result in placing the individual's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part.

5.4 If the hospital determines that an individual has an emergency medical condition, it is required under EMTALA to either stabilize the condition or to transfer the individual to another medical facility in compliance with the act's requirements.

5.5 ADVENTIST owns, operates and manages Adventist Health Sierra Vista formerly known as Sierra Vista Regional Medical Center (SVRMC). At all times relevant to this matter, SVRMC operated the emergency department and was a hospital that participates in the Medicare program and is therefore subject to the requirements of EMTALA.

5.6 On February 7, 2023, Michael Shepherd presented to the emergency department of SVRMC demonstrating acute symptoms including severe alcohol withdrawal and hallucinations, as evidenced by his inability to sleep for three days, experiencing threatening hallucinations, and expressing fears for his safety in text messages.

5.7 Despite these symptoms, which clearly indicated an emergency medical condition under EMTALA, SVRMC and its staff failed to provide an appropriate medical screening examination to determine the severity of Michael Shepherd's condition.

5.8 Furthermore, SVRMC discharged Michael Shepherd without stabilizing his emergency medical condition, directly contravening EMTALA mandates.

5.9 As a direct and proximate result of SVRMC's failure to screen and stabilize Michael Shepherd under the requirements of EMTALA, he suffered worsening of his condition, ultimately leading to his death from alcohol withdrawal and related complications after he wandered from the hospital and fell into a nearby ravine.

5.10 Plaintiff seeks all remedies available under EMTALA, including compensatory damages for the wrongful death of Michael Shepherd, due to the

hospital's breach of statutory duties.

**COUNT TWO – BREACH OF LPS ACT –CA.WELF. & INST.CODE § 5150 ET. SEQ. -**

6.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

6.1 The Lanterman-Petris-Short Act (LPS Act), CA..Welf. & Inst.Code §§5150 et. seq. imposes specific legal duties on hospitals that operate emergency departments.

6.2 Under the LPS Act, a person who is dangerously or gravely disabled due to a mental disorder may be detained for involuntary treatment. A hospital is mandated to provide an appropriate medical screening examination to any individual who comes to the emergency department and requests examination or treatment for a medical condition, to determine whether an emergency medical condition exists.

6.3 At the time he was taken to SVRMC by ambulance, Michael Shepherd had a mental health condition, including but not limited to chronic alcoholism.

6.4 When he was taken to SVRMC by ambulance, Michael Shepherd was suffering from a grave disability; to wit, he was unable to provide for his basic personal needs for food, clothing, or shelter due to mental disorder.

6.5 On information and belief, at some point while at SVRMC he stated he was unwilling or incapable of accepting treatment voluntarily because of his mental health condition which at the time included auditory and visual hallucinations.

6.6 On information and belief, no psychiatrist or someone authorized to conduct LPS evaluations conducted or participated in an evaluation as to whether he was gravely disabled and needed referral to a facility with more specialized care for mental health and/or acute alcohol withdrawal.

6.7 SVRMC failed to properly evaluate Michael Shepherd when he was demonstrating acute symptoms including severe alcohol withdrawal and hallucinations, as evidenced by his inability to sleep for three days, experiencing threatening hallucinations, and expressing fears for his safety in text messages.

6.8 Despite these symptoms, which clearly indicated a mental condition which gravely disabled him, SVRMC failed to provide an appropriate evaluation as required by the Lanterman-Petris-Short Act (LPS Act), CA..Welf. & Inst.Code §§5150 et. seq to determine the severity of Michael Shepherd's condition.

6.9 Furthermore, SVRMC discharged Michael Shepherd without stabilizing his mental health condition when gravely disabled, directly contravening the LPS Act's mandates.

6.10 As a direct and proximate result of SVRMC's failure to screen and

stabilize Michael Shepherd under the requirements of the LPS Act, he suffered worsening of his condition, ultimately leading to his death from alcohol withdrawal and related complications after he wandered from the hospital and fell into a nearby ravine.

6.11 Plaintiff seeks all remedies available under the LPS Act, including compensatory damages for the wrongful death of Michael Shepherd, due to the hospital's breach of statutory duties.

**COUNT THREE: FAILURE TO PROTECT FROM BODILY HARM UNDER CALIFORNIA CIVIL CODE SECTION 43**

7.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

7.1 California Civil Code Section 43 protects every individual from bodily harm and ensures their right to safety and well-being.

7.2 Defendants had a duty to protect Michael Shepherd, a patient under their care, from bodily harm by providing appropriate medical treatment and ensuring his safety.

7.3 Defendants breached this duty by discharging Michael Shepherd from the hospital on February 7, 2023, despite his severe symptoms of alcohol withdrawal and hallucinations, which required medical supervision and treatment.

7.4 At the time of his discharge, Michael Shepherd was visibly disoriented and incapacitated, as evidenced by his severe symptoms and the hospital's own records, which noted his condition.

7.5 Defendants' breach of duty directly resulted in Michael Shepherd wandering away from the hospital, falling into a nearby ravine, and subsequently suffering fatal injuries.

7.6 Michael Shepherd's death was a foreseeable consequence of Defendants' failure to provide the necessary medical care and ensure his safety while he was experiencing severe withdrawal symptoms.

7.7 As a direct and proximate result of Defendants' actions, Michael Shepherd suffered bodily harm leading to his death, and Plaintiff has suffered damages.

7.8 Plaintiff seeks all remedies available under the law for the wrongful death of Michael Shepherd, including but not limited to compensatory damages, medical and funeral expenses, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and consortium.

**COUNT FOUR: VIOLATION OF CALIFORNIA CIVIL CODE SECTION 3428 - FAILURE TO ARRANGE MEDICALLY NECESSARY HEALTH CARE SERVICE**

8.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

8.1 California Civil Code Section 3428 imposes a duty on health care service plans and providers to arrange for medically necessary health care services for their patients.

8.2 Defendants, as a health care providers, owed a legal duty to Michael Shepherd to arrange for the medically necessary health care services appropriate for his condition.

8.3 On or about February 7, 2023, Michael Shepherd was brought to SVRMC suffering from severe alcohol withdrawal symptoms, including hallucinations and severe disorientation, conditions known to require medical treatment.

8.4 Despite his critical condition, as evidenced by his symptoms and the urgent need for medical intervention typically required under such circumstances, Defendants failed to provide the necessary medical care.

8.5 Instead of arranging for the medically necessary health care services that Michael Shepherd urgently required, SVRMC discharged him prematurely on the same day of his admission, February 7, 2023, without adequate treatment for his withdrawal symptoms.

8.6 The decision to discharge Michael Shepherd was made despite clear indications from his symptoms that he was in a critical state requiring medical intervention, as Michael himself texted at 5:45 PM on the day of his discharge, stating: "I need help at Sierra. They're going to kill me. I had no crack," indicating his awareness of the severe inadequacy of his treatment and his ongoing critical condition.

8.7 As a direct and proximate result of SVRMC's failure to arrange the medically necessary health care services, Michael Shepherd suffered significant harm. After being discharged, he wandered away from the hospital, became disoriented, and subsequently fell into a nearby ravine where he was found deceased eight days later.

8.8 The cause of death was determined to be complications arising from alcohol withdrawal, which could have been prevented had Defendants fulfilled their duty to provide or arrange necessary medical care.

8.9 By failing to arrange for the medically necessary health care services for Michael Shepherd, SVRMC breached its duty under California Civil Code Section 3428.

8.10 As a direct consequence of this breach, Michael Shepherd suffered fatal injuries, and Plaintiff has suffered damages.

8.11 Plaintiff seeks all remedies available under the law for the violations stated herein.

**COUNT FIVE: VIOLATION OF WEST'S ANN.CAL.GOV.CODE § 12948 - DENIAL OF CIVIL RIGHTS**

9.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

9.1 Defendants, at all relevant times, were responsible for ensuring the civil rights of individuals in their care, including the right to receive appropriate medical treatment without discrimination based on disability or medical condition, as guaranteed under West's Ann.Cal.Gov.Code § 12948.

9.2 Michael Shepherd, the decedent, was under the care of Defendants following his detention/arrest by law enforcement due to severe alcohol withdrawal symptoms, which included hallucinations and severe disorientation, indicating a serious medical and mental health condition.

9.3 Despite the decedent's critical condition and the obvious need for medical supervision and treatment, Defendants discharged him prematurely without providing the necessary medical treatment, directly contravening the standards of care required for a patient suffering from severe alcohol withdrawal and hallucinations.

9.4 The decision to discharge Michael Shepherd was made without regard to his medical needs and safety, effectively denying him the civil rights to adequate and non-discriminatory medical care as protected under West's Ann.Cal.Gov.Code § 12948.

9.5 As a direct and proximate result of the Defendant's actions, Michael Shepherd suffered fatal injuries. After being prematurely discharged, he wandered disoriented and fell into a nearby ravine, where he was later found deceased. The cause of death was determined to be complications related to his untreated alcohol withdrawal.

9.6 The denial of essential medical care and the subsequent fatality of Michael Shepherd constitute a violation of his civil rights under Cal.Gov.Code § 12948, for which Defendants are liable.

9.7 Plaintiff seeks all remedies available under the law for the violation of the civil rights of Michael Shepherd, including but not limited to compensatory and punitive damages.

**COUNT SIX: CAL.INS.CODE 10144.57 - FAILURE TO STABILIZE BEFORE DISCHARGE**

10.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

10.1 Cal.Ins.Code 10144.57 imposes a duty on healthcare providers to stabilize a patient experiencing a medical emergency before discharging them from their facility.

10.2 Defendants had a duty to stabilize Michael Shepherd, who was experiencing severe alcohol withdrawal symptoms, a recognized medical emergency requiring immediate and continuous medical supervision and intervention.

10.3 Michael Shepherd was brought to SVRMC exhibiting clear and severe symptoms of alcohol withdrawal, including hallucinations and severe agitation, as evidenced by his desperate pleas for help and expressions of fear for his life in text messages sent shortly before his discharge.

10.4 Despite these symptoms, which clearly indicated a medical emergency, SVRMC discharged Michael Shepherd without stabilizing his medical condition. The hospital records and witness statements confirm that Michael was discharged with a notation that he "did not want to be seen," ignoring the standard of care required under the circumstances.

10.5 As a direct and proximate result of being discharged in an unstable medical condition, Michael Shepherd wandered away from the hospital, became disoriented, and subsequently suffered a fatal fall into a nearby ravine. His body

was discovered eight days later, with the cause of death determined to be complications related to his untreated alcohol withdrawal.

10.6 By failing to stabilize Michael Shepherd before discharge, defendants violated Cal.Ins.Code 10144.57, directly leading to his untimely and preventable death.

10.7 As a result of the defendants' actions, Plaintiff seeks damages for the wrongful death of Michael Shepherd, including but not limited to, loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and funeral and burial expenses.

**COUNT SEVEN: MEDICAL MALPRACTICE - NEGLIGENCE**

11.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

11.1 Defendants owed a duty of care to Michael Shepherd to provide adequate medical treatment and to ensure his safety and well-being while under their care.

11.2 Defendants breached this duty of care by discharging Michael Shepherd prematurely on February 7, 2023, despite his severe symptoms of alcohol withdrawal and hallucinations, as evidenced by his documented condition at the time of admission and the urgent need for medical intervention typically required in

such severe withdrawal scenarios.

11.3 The breach of duty is further exemplified by Defendants' failure to adhere to standard medical protocols for treating severe alcohol withdrawal, which necessitates close monitoring and medical intervention to prevent complications, including severe disorientation and risk of injury.

11.4 As a direct and proximate result of Defendants' negligence, Michael Shepherd suffered severe disorientation and confusion after being discharged, which led him to wander away from the hospital and subsequently fall into a nearby ravine.

11.5 Michael Shepherd's fall resulted in fatal injuries, and he was found deceased eight days later, with the cause of death determined to be related to his untreated alcohol withdrawal and the injuries sustained from the fall.

11.6 Plaintiff has suffered economic and non-economic damages as a result of the wrongful death of Michael Shepherd, including but not limited to loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and funeral and burial expenses.

11.7 The actions of Defendants represent a clear deviation from the standard of care expected of medical facilities and professionals, particularly in the treatment of patients exhibiting severe symptoms of alcohol withdrawal, thereby

constituting negligence.

11.8 Plaintiff seeks damages in an amount to be proven at trial, including punitive damages, due to the egregious nature of Defendants' conduct and the profound impact of their negligence on the life and well-being of Michael Shepherd and his surviving family members.

**COUNT EIGHT: NEGLIGENCE**

12.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

12.1 Defendants owed a duty of care to Michael Shepherd to provide appropriate medical treatment and ensure his safety while under their care.

12.2 Defendants breached this duty by discharging Michael Shepherd from the hospital despite his severe symptoms of alcohol withdrawal and hallucinations, which required medical supervision and treatment.

12.3 At the time of his discharge, Michael Shepherd was in a vulnerable state, suffering from confusion and disorientation, as evidenced by his text message stating, "I need help at Sierra. They're going to kill me. I had no crack," indicating his distressed mental state and perception of threat.

12.4 Defendants' breach of duty directly resulted in Michael Shepherd wandering away from the hospital, subsequently falling into a nearby ravine where

he remained undiscovered for eight days, leading to his death.

12.5 The cause of Michael Shepherd's death was determined to be alcohol withdrawal, but most likely exacerbated by his confusion and disorientation, which led to the fall that contributed to his fatal condition.

12.6 As a direct and proximate result of Defendants' negligence, Michael Shepherd suffered fatal injuries, plaintiff has suffered loss of companionship, emotional distress, and other damages.

12.7 Defendants' actions were below the standard of care expected of a medical facility, especially given the clear signs of Michael Shepherd's severe withdrawal symptoms and his expressed fears for his safety.

12.8 By failing to provide the necessary medical care and supervision, and opting to discharge Michael Shepherd in a compromised state, Defendants negligently caused the conditions leading to his death.

12.9 Plaintiff seeks damages for the wrongful death of Michael Shepherd, including but not limited to, emotional distress, loss of love and companionship, funeral and burial expenses, and any other compensatory damages as allowed by law.

**COUNT NINE: NEGLIGENCE PER SE**

13.0 Plaintiff incorporates all other paragraphs in this Complaint by

reference as though fully written here.

13.1 Under California law, a claim for negligence per se is established when a defendant violates a statute or regulation, the violation causes an injury that the statute or regulation was designed to prevent, and the injured party is among the class of persons the statute or regulation was intended to protect.

13.2 Defendants violated specific statutory duties that prescribe certain actions to prevent the type of harm that occurred to Michael Shepherd, specifically those related to the treatment and release of patients suffering from severe medical conditions such as alcohol withdrawal and hallucinations.

13.3 California Health & Safety Code § 1317 (Emergency Services and Care) requires health care providers to provide emergency services and care to patients in emergency conditions without prematurely discharging them. Michael Shepherd was discharged from SVRMC despite presenting severe symptoms of alcohol withdrawal and hallucinations, which are recognized as requiring emergency medical care.

13.4 The premature discharge of Michael Shepherd from SVRMC directly resulted in his severe disorientation and confusion, leading him to wander and subsequently fall into a nearby ravine, which led to his death eight days later from complications directly associated with his untreated medical condition.

13.5 Michael Shepherd was a member of the class of persons that California Health & Safety Code § 1317 aims to protect, namely patients in need of immediate and continuous emergency medical care to prevent significant harm or death.

13.6 As a direct and proximate result of Defendant's violation of statutory duties under California Health & Safety Code § 1317, Michael Shepherd suffered fatal injuries, which the statute explicitly aims to prevent by mandating appropriate emergency medical care and prohibiting premature discharge.

13.7 Therefore, based on the foregoing, Defendants are liable to Plaintiff for negligence per se for the wrongful death of Michael Shepherd, entitling Plaintiff to damages according to proof at trial.

**COUNT TEN: NEGLIGENT HIRING**

14.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

14.1 ADVENTIST had a duty to hire competent and qualified personnel capable of providing safe and adequate medical care to patients experiencing severe medical conditions, including alcohol withdrawal and hallucinations.

14.2 ADVENTIST breached this duty by hiring staff who were not competent or qualified to recognize and treat the severe medical conditions of Michael Shepherd, specifically his severe alcohol withdrawal and hallucinations.

14.3 At the time of hiring, ADVENTIST failed to conduct appropriate background checks, verify credentials, or provide adequate training to its staff, which would have revealed or mitigated the incompetency in handling severe medical conditions.

14.4 ADVENTIST's staff, as a direct result of their incompetency and unfitness, failed to provide necessary medical care to Michael Shepherd and inappropriately discharged him from SVRMC despite his severe condition.

14.5 As a direct and proximate result of ADVENTIST's negligent hiring practices, Michael Shepherd was discharged without proper medical treatment, leading to his disorientation and subsequent death from a fall into a nearby ravine.

14.6 Plaintiff has suffered damages including, but not limited to, loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and funeral and burial expenses.

14.7 The conduct of ADVENTIST was a substantial factor in causing the harm to Michael Shepherd and his surviving family members.

**COUNT ELEVEN: NEGLIGENT SUPERVISION**

15.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

15.1 A duty of care was owed by Defendants to properly supervise and

oversee the treatment and care of patients, including Michael Shepherd, to ensure their safety and well-being.

15.2 Defendants breached this duty by failing to adequately supervise the medical personnel involved in the care and treatment of Michael Shepherd, particularly given his severe symptoms of alcohol withdrawal and hallucinations.

15.3 On February 7, 2023, despite Michael Shepherd's critical condition characterized by severe alcohol withdrawal symptoms and hallucinations, the medical staff at SVRMC decided to discharge him without providing necessary medical treatment or ensuring his safety, directly due to inadequate supervision.

15.4 The lack of proper supervision and oversight at SVRMC directly resulted in the premature and unsafe discharge of Michael Shepherd, who was clearly in a vulnerable and disoriented state, as evidenced by his subsequent wandering and accidental death.

15.5 As a direct and proximate result of the negligent supervision by Defendants, Michael Shepherd suffered fatal injuries. After being discharged, he wandered off, fell into a nearby ravine, and was found deceased eight days later, with the cause of death determined to be related to his untreated alcohol withdrawal symptoms.

15.6 The failure to supervise the medical staff appropriately and ensure

adherence to medical standards under the circumstances presented by Michael Shepherd's condition constitutes negligent supervision by Defendant.

15.7 Plaintiff has suffered damages as a direct result of the negligent supervision by Defendant including but not limited to, emotional distress, loss of companionship, and other compensable losses.

15.8 Plaintiff seeks damages as permitted under the law for the suffering, loss, and harm caused by the negligent supervision of Defendants' staff, which directly led to the wrongful death of Michael Shepherd.

**COUNT TWELVE: NEGLIGENT TRAINING**

16.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

16.1 ADVENTIST owed a duty to provide adequately trained staff capable of assessing, diagnosing, treating, and making appropriate discharge decisions for patients presenting with severe medical conditions, including but not limited to alcohol withdrawal and hallucinations.

16.2 ADVENTIST breached this duty by failing to properly train its medical and nursing staff in the recognition, ongoing assessment, management, and appropriate medical protocols necessary for treating patients suffering from severe alcohol withdrawal symptoms.

16.3 The facts supporting this breach include, but are not limited to, the decision to discharge Michael Shepherd (hereinafter "Decedent") on February 7, 2023, despite his presentation at the hospital with severe symptoms of alcohol withdrawal, including hallucinations and severe disorientation, as evidenced by his medical records and the symptoms he exhibited.

16.4 At the time of Decedent's discharge, he was visibly disoriented and in distress, conditions that were critically exacerbated by his severe alcohol withdrawal. Despite these clear signs, staff at ADVENTIST’s facility decided to discharge him, a decision that a properly trained medical professional would not have made under the circumstances.

16.5 As a direct and proximate result of ADVENTIST's failure to adequately train its staff, Decedent was discharged in a vulnerable and unstable condition, which foreseeably led to his wandering away from the medical facility, subsequently falling into a nearby ravine, and suffering fatal injuries.

16.6 The lack of adequate training to the medical staff on handling patients with severe alcohol withdrawal symptoms is evidenced by the discharge of Decedent without ensuring his medical stability and safety, directly leading to his untimely death.

16.7 ADVENTIST's failure to train its employees, which constitutes

negligence, was the direct and proximate cause of the harms suffered by Decedent, including his death, and the subsequent damages incurred by Plaintiff as a result of this loss.

16.8 Therefore, ADVENTIST is liable to Plaintiff for damages stemming from its negligent training of medical personnel in violation of the standards of care required for medical facilities and personnel under similar circumstances.

**COUNT THIRTEEN: RESPONDEAT SUPERIOR - VICARIOUS LIABILITY**

17.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

17.1 At all relevant times, ADVENTIST was the employer of various medical staff, including but not limited to doctors, nurses, and administrative staff, who were acting within the scope of their employment and under the direct supervision and control of Defendant.

17.2 Defendant, as an employer, is vicariously liable for the negligent acts and omissions of its employees under the doctrine of *respondeat superior*, which holds an employer legally responsible for the wrongful acts of an employee when such acts occur within the scope of employment.

17.3 The medical staff employed by ADVENTIST had a duty to provide

reasonable care to Michael Shepherd (hereinafter "Decedent") who was under their care and presented with severe symptoms of alcohol withdrawal and hallucinations, necessitating immediate and continuous medical treatment.

17.4 The medical staff at ADVENTIST's facility breached their duty of care by failing to properly assess Decedent's medical condition, prematurely discharging him without adequate treatment for his severe withdrawal symptoms and hallucinations and failing to ensure his safety upon discharge.

17.5 The breach of duty by ADVENTIST's medical staff was within the scope of their employment as they were performing tasks they were employed to perform, namely the medical evaluation and treatment of patients, and their decision to discharge Decedent was a medical decision directly related to their employment duties.

17.6 As a direct and proximate result of the negligent acts and omissions of Defendant's employees, Decedent wandered away from the hospital in a confused and disoriented state, subsequently fell into a nearby ravine, and suffered fatal injuries, leading to his untimely death.

17.7 The wrongful death of Decedent was a foreseeable consequence of the negligent discharge by Defendant's medical staff, given Decedent's vulnerable condition at the time of discharge.

17.8 ADVENTIST is therefore vicariously liable for the damages suffered by Plaintiff as a result of the wrongful death of Decedent, including but not limited to emotional distress, loss of love and companionship, and funeral and burial expenses.

**COUNT FOURTEEN: AMERICANS WITH DISABILITIES ACT**

18.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

18.1 SVRC is subject to Title III of the Americans with Disabilities Act (ADA). As privately owned and operated hospital, it falls under the category of "public accommodations" which are covered by Title III of the ADA. This means that SVRC must provide full and equal access to their health care services and facilities for individuals with disabilities

18.2 ADVENTIST breached Title III of the ADA in the following ways:

Discrimination in the provision of goods and services: The hospital may have violated the ADA by failing to provide full and equal access to its health care services for an individual with a disability17.

a) Failing to make reasonable modifications to its policies, practices, or procedures to accommodate the individual's disability-related needs.

b) Failing to provide effective communication by failing to ensure effective communication with Michael Shepherd during the treatment process,

c) Denial of equal opportunity to benefit from the hospital's services by not treating Michael Shepherd, defendant denied him an equal opportunity to benefit from its health care services.

18.3 Plaintiff seeks injunctive relief and attorney's fees on this claim.

**COUNT FIFTEEN: SECTION 504 OF THE REHABILITATION ACT**

19.0 Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

19.1 Section 504 of the Rehabilitation Act prohibits discrimination against individuals with disabilities in programs or activities that received federal financial assistance.

19.2 Alcohol addiction is generally considered a disability under federal law.

19.3 SVRMC received federal financial assistance.

19.4 Michael Shepherd was a qualified person with a disability.

19.5 SVRMC discriminated against Michael Shepherd on the basis of his disability.

19.6 That discrimination resulted in harm to Michael Shepherd.

19.7 Plaintiff seeks all lawful damages for this discrimination including compensatory damages and fees against ADVENTIST.

## VI. MONETARY RELIEF REQUESTED

Plaintiff requests monetary relief in the amount of $10,000,000.00.

## VII. JURY DEMAND

Plaintiff demands jury trial on all issues so triable in this matter..

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KAYDIN SHEPHERD, respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant ADVENTIST from continuing practices that fail to meet the required standard of care for patients undergoing severe withdrawal symptoms;

D. Award Plaintiff actual damages in an amount to be determined at trial, including but not limited to medical expenses, funeral expenses, and loss of

expected earnings, with the appropriate multiplier for punitive considerations;

E. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under California Civil Code Sections 3333 and 3294, and other relevant statutes;

F. Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of litigation pursuant to California Civil Code Section 1021.5 and other applicable laws;

G. Award Plaintiff statutory damages as provided under California Civil Code Section 3428 and other relevant sections for the failure of the hospital to provide necessary medical care;

H. Award Plaintiff such other and further relief as the Court deems just and proper.

Dated: February 7, 2025

Respectfully Submitted,

*/s/ Mark Choate*______________________

Mark Choate, 206229
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490
(206) 424-9705 (fax)
lawyers@choatelawfirm.com